IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **DEANNA COFFEY,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 7:19-cv-00015** |
| **v.** | ) | |
| | ) | |
| **TYLER STAFFING SERVICES,** | ) | |
| **INC., <u>et al</u>.,** | ) | |
| **Defendants.** | ) | **By:   Michael F. Urbanski** |
| | ) | **Chief U.S. District Judge** |

<u>**MEMORANDUM OPINION**</u>

This matter is before the court on defendants Tyler Staffing Services, Inc., doing business as Chase Professionals ("Chase"), and ServiceMaster of Shenandoah Valley, Inc.'s ("ServiceMaster") motions for summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure. ECF Nos. 147, 149. For the reasons discussed below, the court will **GRANT** Chase's motion for summary judgment in its entirety and **GRANT in part** and **DENY in part** ServiceMaster's motion for summary judgment. While Coffey's claim of hostile work environment (Count I) does not rise to the level of severe or pervasive sexual harassment perpetrated by ServiceMaster, her retaliatory termination claim (Count II) raises genuine issues of material fact requiring a jury trial.

**I.**

On January 3, 2017, plaintiff Deanna Coffey interviewed with Chris Martin, a ServiceMaster manager. Coffey 2nd Dep., ECF No. 150-9, at 23. ServiceMaster is a cleaning and damage repair business that contracts with many temporary staffing agencies to provide labor as needed. Martin offered Coffey a job with ServiceMaster and told her that her start

date would be arranged through Chase, a temporary staffing service. Coffey 2nd Dep., ECF No. 150-9, at 25-26. Chase did not recruit Coffey as an employee, nor did Coffey seek out Chase for placement at ServiceMaster. Martin reached out to a Chase recruiter, Manisha Hall, and informed her that he hired Coffey for ServiceMaster's temporary placement and that she would be "on-boarding and payrolling through Chase." Hall Dep., ECF No. 148-3, at 15. Pursuant to an agreement between Chase and ServiceMaster, Coffey was a "payrolled employee" of Chase assigned to work at ServiceMaster. Chase Rule 30(b)(6) Dep., ECF No. 148-12, at 33. Chase's Kimberly Schaffer explained that for a payrolled employee such as Coffey, "[t]he only thing that we have control over is payroll, OSHA compliance, and to make sure that our employees are safe from -- and free from harassment of any kind." Id. at 12.[1] Chase's Schaffer explained that Chase had no other control over Coffey's work with ServiceMaster.

> Anything that they do from the day-to-day operation, where she goes to work, what she wears, what she has on, what equipment she takes with her, that all comes from Servicemaster's; it does not come from Chase Professionals. We are not involved in their day-to-day operations. Because she was a payrolled employee, if they wanted to let her go, they have that power. That does not come from Chase Professionals.

Id. at 10.   All training, transportation, equipment, evaluation, supervision, clothing, and materials were provided by ServiceMaster. Id. at 161-162. Coffey began her temporary assignment with ServiceMaster around January 10, 2017. ECF No. 1.

---

[1] The term "payrolled employee" is not found in the Service Agreement executed between Chase and Servicemaster. ECF No. 148-14, at 188-194. The Service Agreement provides that "CHASE is in the business of supplying staffing service Employees as CLIENT may request, either on a temporary/contract basis or on a permanent basis." Paragraph 2 of the Service Agreement provides that "CHASE retains the authority to set pay rates and to hire and terminate temporary employees and contractors, mainly if Employee or CLIENT violate the terms of this agreement." Id. at 188.

Coffey alleges that on March 2, 2017, a ServiceMaster co-worker, Charles Chapman, made inappropriate sexual comments to her. Specifically, Coffey alleges that Chapman stated, "you don't need to be wearing the pants you are wearing because I can see a perfect outline of your cute little ass," and "you have a smoking hot body." Id. Chapman also asked Coffey why so many young women "wanted him" and told her that he was going to leave his wife for a younger woman in the army. Id. at 5-6. On the job site, a dog started "humping" Coffey's leg, which Chapman encouraged with "atta boy. Keep humping her. Good work." Id. at 6. Coffey asked Chapman to leave her alone, but he persisted. Id. Later that day, Chapman asked Coffey to drive him home. Id. When Coffey refused, Chapman became "extremely angry" and said, "[W]ell fine, then I'll just have the bitch pick me up," which she took to mean his wife. Id.

On Friday, March 3, 2017, Coffey reported the harassment to a ServiceMaster crew lead, Mary Faw, who suggested that Coffey tell ServiceMaster managers Chris Martin and Todd White. That same day, Faw related Coffey's allegations to Martin. Martin Dep., ECF No. 150-15, at 30. On Monday, March 6, 2017, Martin and White had a meeting with Coffey to address her being late two days in a row,[2] for which Coffey received a written warning notice. Coffey 2nd Dep., ECF No. 150-9, at 219. Immediately after receiving the written warning, Coffey told Martin and White of Chapman's harassment. Id. at 219-220. The managers then relayed Coffey's complaint to ServiceMaster's owner, Jeb Arbaugh. Martin Dep., ECF No. 150-10, at 25.

---

[2] While Coffey disputes ServiceMaster's claim that she was late twice, she concedes that she was late once.

Martin and White confronted Chapman, and their accounts of the meeting differ to a degree. White testified that Chapman denied making inappropriate comments to Coffey. White Dep., ECF No. 150-6, at 27-29. Martin testified that "[h]e never really denied the statements; however, they were said – he had tried to say that the context was different from what Deanna had taken it as." Martin Dep., ECF No. 150-10, at 25.

Martin testified that at some point later ServiceMaster's owner Arbaugh "poked his head in my door and he said, Chris, I just talked to Mary and Mary said that she's not even a good worker, that her workmanship has gone down and we need to let her go today." Martin Dep., ECF No. 150-10, at 31. Arbaugh testified that he learned from Donna Marshall, a ServiceMaster supervisor, that Coffey had performance and dependability issues and made the decision to terminate Coffey's employment with ServiceMaster. Arbaugh Dep., ECF No. 150-1, at 114; ServiceMaster Rule 30(b)(6) Dep., ECF No. 150-16, at 7. Arbaugh denied that Coffey was terminated because she complained about sexual harassment, stating that "it had nothing to do with this allegation." Arbaugh Dep., ECF No. 150-1, at 61-62, 114.

On March 7, 2017, Martin called Manisha Hall at Chase to end Coffey's temporary assignment at ServiceMaster. At deposition, Martin recalled little of that conversation, stating that he did not remember whether he told Hall of Coffey's sexual harassment complaint. Martin Dep., ECF No. 150-10, at 29, 45, 48.

The next day, March 8, 2017, Chase's Manisha Hall emailed Martin as follows:

> Chris,
>
> Good morning!

> To confirm with you, I will be terminating Deanna after her shift today based on our discussion yesterday. We will be seeking a replacement ASAP.
>
> Thank you!
>
> Sincerest regards,
>
> Manisha

ECF No. 154-7. A little more than an hour later, Martin responded to Hall's email, stating: "Yes correct. It was also brought to my attention that her workmanship has went down too." Id. Coffey attributes great importance to Martin's response, arguing that the use of the word "also" and the timing of his reference to Coffey's declining workmanship suggests that any complaints about her workmanship were pretextual.

At deposition, Chase's Manisha Hall likewise did not clearly recall her March 7, 2017 telephone call with Martin other than Martin "wanted to end her assignment." Hall Dep., ECF No. 154-10, at 24-26. Hall did not recall Martin telling her why he wanted to end Coffey's assignment. Id. at 25.  When asked specifically as to whether Martin mentioned Coffey complaining about sexual harassment, Hall responded: "I do not recall that, and I would have flagged that had I heard such a thing." Id. at 26. Hall testified that she first learned of Coffey's concerns about sexual harassment after her ServiceMaster assignment ended. Id. at 26. Consistently, Chase's Schaffer testified that the first Chase knew of sexual harassment "is when she came in and told us." Schaffer Dep., ECF No. 148-4, at 24.

On March 8, 2017, Chase's Hall told Coffey that her temporary assignment with ServiceMaster ended when she completed her shift that day. A day or two later, Coffey approached Chase and said that she had been sexually harassed and was being retaliated

against. Coffey 2nd Dep., ECF No. 150-9, at 227-228; Hall Dep., ECF No. 154-10, at 28. Kim Shaffer at Chase asked Coffey to put her complaint in writing. Id. at 28. Coffey contends that she was told Chase would investigate the harassment, but she never heard back from them. ECF No. 1. Chase's Shaffer testified that Chase ended its relationship with ServiceMaster while it investigated Coffey's complaints. Chase Rule 30(b)(6) Dep., ECF No. 148-12, at 17-20. Importantly, Shaffer testified that Chase "never terminated [Coffey]. As a matter of fact, she is still eligible and active to this day." Id. at 11.

Coffey filed a Charge of Discrimination with the EEOC on March 14, 2017, and received a notice of right to sue from the EEOC on October 24, 2018. ECF No. 1 at 2. On January 8, 2019, Coffey brought a two-count complaint against defendants ServiceMaster and Chase alleging sex discrimination in the workplace and retaliatory termination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). ECF No. 1. Coffey alleges that Chase and ServiceMaster are jointly and severally liable as her employers for action and inaction that created a hostile work environment and for firing her when she raised complaints about sexual harassment. Id.

Coffey filed an Amended Complaint on July 11, 2019. ECF No. 48. ServiceMaster and Chase answered on July 25, 2019. ECF Nos. 49, 50. Discovery ensued. Coffey then filed a motion to amend the Amended Complaint on March 30, 2020, asserting that the amendment would add clarity to her claims. ECF No. 112.

The Second Amended Complaint further alleges that Coffey was warned about Chapman's history of inappropriate behavior by ServiceMaster's Faw and that other coworkers expressed similar concerns about him and shared stories detailing Chapman's

physical relationship with another young female coworker. ECF No. 124 at 5. Additionally, Coffey alleges that Chapman brushed against her buttocks when she was not looking, and when she turned around, he was staring at her. Id.

On December 1, 2020, Chase and ServiceMaster moved for summary judgment stating, among other things, that the harassment was not severe or pervasive, there is no liability for the harassment, and no retaliatory action was taken against Coffey. ECF Nos. 148, 150. Plaintiff opposes. ECF No. 154. The court heard argument on February 12, 2021, and the matters are ripe for resolution.

## II.

Pursuant to Rule 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Glynn v. EDO Corp., 710 F.3d 209, 213 (4th Cir. 2013). When making this determination, the court should consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . [any] affidavits" filed by the parties. Celotex, 477 U.S. at 322. Whether a fact is material depends on the relevant substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. (citation omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary

judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party. Glynn, 710 F.3d at 213 (citing Bonds v. Leavitt, 629 F.3d 369, 380 (4th Cir. 2011)). Indeed, "[i]t is an 'axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" McAirlaids, Inc. v. Kimberly–Clark Corp., 756 F.3d 307, 310 (4th Cir. 2014) (internal alteration omitted) (citing Tolan v. Cotton, 134 S. Ct. 1861, 1863 (2014) (per curiam)). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Anderson, 477 U.S. at 255.

The non-moving party must, however, "set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" Glynn, 710 F.3d at 213 (quoting Anderson, 477 U.S. at 252). The non-moving party must show that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Res. Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 635 (4th Cir. 2005) (quoting Anderson, 477 U.S. at 249). "In other words, to grant summary judgment the [c]ourt must determine that no reasonable jury could find for the nonmoving party on the evidence before it." Moss v. Parks Corp., 985 F.2d 736, 738 (4th Cir. 1993) (quoting Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 124 (4th Cir. 1990)). Even when facts are not in dispute, the court cannot grant summary judgment unless there is "no genuine issue as to the inferences to be drawn from" those facts. World-Wide Rights Ltd. P'ship v. Combe Inc., 955 F.2d 242, 244 (4th Cir. 1992).

**III.**

In Count One, Coffey alleges that Chase and ServiceMaster engaged in sex discrimination by means of fostering a hostile work environment. Title VII prohibits employers from discharging or otherwise discriminating against any individual "because of such individual's . . . sex[.]" 42 U.S.C.A. § 2000e-2(a). Sexual harassment that creates a hostile environment in the workplace may constitute sex discrimination. Meritor Savings Bank v. Vinson, 477 U.S. 57, 66 (1986). "Because an employee's work environment is a term or condition of employment, harassment based on sex is actionable under Title VII." Hernandez v. Fairfax Cnty., 719 F. App'x 184, 186 (4th Cir. 2018) (citing E.E.O.C. v. R&R Ventures, 244 F.3d 334, 338 (4th Cir. 2001)). However, "[n]ot all sexual harassment that is directed at an individual because of [their] sex is actionable." Walker v. Mod-U-Kraf Homes, LLC, 775 F.3d 202, 207 (4th Cir. 2014) (quoting Hopkins v. Balt. Gas & Elec. Co., 77 F.3d 745, 753 (4th Cir. 1996)). Thus, in order to prove a hostile work environment claim based on sex discrimination, the plaintiff must show (1) the conduct in question was unwelcomed; (2) the harassment was based on gender; (3) the harassment was sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive or hostile environment; and (4) the basis for imputing liability to the employer exists. E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 313 (4th Cir. 2008); Parker v. Reema Consulting Servs., 915 F.3d 297, 302 (4th Cir. 2019) (citing Bass v. E.I. du Pont de Nemours & Co., 32 F.3d 761, 765 (4th Cir. 2003)).

**A.**

The court is required to grant Chase's motion for summary judgment on Coffey's hostile work environment claim for several reasons. First, there are no facts suggesting that

Chase fostered a hostile work environment at ServiceMaster. As Chase's Schaffer testified, Chase had no operational control over ServiceMaster's workplace. Nor is there any evidence that Chase was aware of claims of sexual harassment at ServiceMaster. In fact, once Chase learned of Coffey's claims, it terminated its relationship with ServiceMaster pending investigation of Coffey's claims. Coffey strains to concoct a basis to hold Chase liable for workplace conditions at ServiceMaster, and none of Coffey's theories has merit.

First, regardless of what Chase's marketing materials may say, from a legal standpoint, Chase is not in partnership with ServiceMaster. To support her claim that Chase and ServiceMaster are in partnership, plaintiff references marketing materials found on Chase's website that they have "business partnerships" with clients across the United States. ECF No. 154 at 6-9. Coffey also points to a brochure written by a Chase recruiter that reads "Chase Professionals in partnership with ServiceMaster Cleaning." ECF No. 159-1 at 7. Coffey further alleges that these marketing references to business partnerships are sufficient to create a legal partnership under Virginia's Uniform Partnership Act, Va. Code § 50-73.79, et seq. ECF No. 154 at 32-33. The court is not persuaded by this argument.

In relevant part, Virginia Code § 50-73.88 states:

> Except as otherwise provided in subsection B, the association of two or more persons to carry on as co-owners a business for profit forms a partnership, whether or not the persons intend to form a partnership.

Va. Code § 50-73.88. There is no evidence suggesting that Chase and ServiceMaster act as co-owners. There was no profit sharing, Chase did not participate in any day-to-day decision making done by ServiceMaster, and the businesses were run as two separate entities. Chase Rule 30(b)(6) Dep., ECF No. 148-12, at 10, 79. All tools and materials needed for jobsites

were provided by ServiceMaster. Id. ServiceMaster supervised employees at worksites. Id. Coffey's job assignments came from ServiceMaster, and they also retained all employee records except for payroll. Id. at 161-162. Mere marketing of Chase as a business partner with ServiceMaster does not create a legal partnership for Title VII purposes.

Coffey next argues that Chase and ServiceMaster are joint employers. Again, the evidence does not support this argument. In Butler, the Fourth Circuit articulated a hybrid test to determine whether employers are considered joint employers for the purposes of Title VII. Butler v. Drive Auto. Indus. of Am., 793 F.3d 404 (4th Cir. 2015). This test requires the court to evaluate several factors:

> (1) authority to hire and fire the individual; (2) day-to-day supervision of the individual, including employee discipline; (3) whether the putative employer furnishes the equipment used and the place of work; (4) possession of and responsibility over the individual's employment records, including payroll, insurance, and taxes; (5) the length of time during which the individual has worked for the putative employer; (6) whether the putative employer provides the individual with formal or informal training; (7) whether the individual's duties are akin to a regular employee's duties; (8) whether the individual is assigned solely to the putative employer; and (9) whether the individual and putative employer intended to enter into an employment relationship.

Butler, 793 F.3d at 414. While none of the factors are dispositive, the first three are most important. Id. at 414-15. All parties agree that ServiceMaster hired Coffey and asked Chase to end her assignment there.[3] Second, Chase provided no day-to-day supervision of

---

[3] While the concept of a "payrolled employee" is a bit of a square peg in the round hole of the Chase/ServiceMaster Service Agreement, there is no dispute that ServiceMaster's Martin hired Coffey and told Chase's Manisha Hall to end her assignment with ServiceMaster. Again, while Coffey's assignment with ServiceMaster was terminated, she remains eligible to work for Chase. Chase Rule 30(b)(6) Dep., ECF No.

ServiceMaster employees. Lastly, the third factor also weighs against joint employment because ServiceMaster provided all equipment and worksite materials necessary to complete assignments. Because these factors weigh against joint employment, the court finds that Chase and ServiceMaster are not joint employers for the purposes of Title VII.

Next, Coffey argues that Chase and ServiceMaster are so integrated that they constitute a single employer for the purposes of Title VII. "Under the single, integrated theory of employer liability . . . several companies may be considered so interrelated that they constitute a single employer for purposes of the Title VII statutory scheme." Wright v. Mountain View Lawn Care, LLC, No. 7:15cv224, 2016 WL 1060341, at *7 (W.D. Va. Mar. 11, 2016). In determining whether two companies are a single employer, the Fourth Circuit has articulated four factors for courts to assess: (1) common management; (2) interrelation between operations; (3) centralized control of labor relations; and (4) degree of common ownership/financial control." Id. (quoting Hukill v. Auto Car, Inc., 192 F.3d 437, 442 (4th Cir. 1999)). While no factor is determinative, the third factor is most important. Id.

Here, the record does not support Coffey's single employer argument. Chase and ServiceMaster have separate management and no one person acts as a liaison between the two entities; Chase does not handle day-to-day supervision of ServiceMaster employees nor do they know what ServiceMaster's operations entailed; Chase has no control over ServiceMaster employees and vice-versa; and there is no common ownership or common financial control. ServiceMaster uses several temporary staffing agencies. Arbaugh Dep., ECF No. 150-1, at 20-

---

148-12, at 11. See Coffey 2nd Dep., ECF No. 148-1, at 141 ("Q. So Chase never told you . . . that your employment with Chase ended? A. No. They said my assignment was up.").

22 (stating that ServiceMaster has used "a lot of different [temp agencies]" over the years). There is nothing in the record that suggests Chase and ServiceMaster are so intertwined as to support a finding of a single employer.

Finally, Coffey argues that Chase is directly liable under Title VII. "A staffing agency . . . may be held liable for employment discrimination in violation of Title VII by directly discriminating against an employee through their own actions, or by failing to take 'corrective action' to remedy discrimination by a co-employer about which they knew or should have known." Brief-McGurrin v. Cisco Sys., Inc., No. 1:18cv131, 2019 WL 1332357, at *2 (M.D.N.C. Mar. 25, 2019) (citing Butler, 793 F.3d at 410). Simply because an employee has two employers does not necessarily mean that they are liable for the acts of the other employer. Lee v. Mathis, No. PX 17-2836, 2018 WL 3439261, at *35 (D. Md. July 17, 2018). "[W]hen an employee claims discrimination against two joint employers, she must show that [each] defendant knew or should have known of the discriminatory conduct and that it failed to take those corrective measures within its control." Williams v. Grimes Aerospace Co., 988 F. Supp. 925, 937-38 (D.S.C. 1997).

Here, Coffey must show that Chase knew or should have known of her harassment and failed to take an appropriate corrective action. The record shows that Coffey did not report her harassment to anyone at Chase. Coffey 2nd Dep., ECF No. 150-9, at 98. Chase had no daily interaction with or supervision over ServiceMaster employees, and there are no facts to suggest that Chase was on notice of Chapman's harassment. Chase's Hall testified that she learned that Coffey had concerns about sexual harassment at ServiceMaster after her separation. Hall Dep., ECF No. 154-10, at 26; see Schaffer Dep., ECF No. 148-4, at 24 ("Q.

No talk of sex harassment with whom? A. Nobody. The first we knew of it was when she came in and told us."). Additionally, as soon as Coffey brought the harassment to Chase's attention, Chase took swift and corrective measures by: (1) telling Coffey they were uncomfortable sending her back to ServiceMaster until they were able to investigate the matter; (2) assuring Coffey that Chase had not terminated her employment; (3) requesting a written statement from Coffey; and (4) ceasing employment relations with ServiceMaster for 15 months until results of the investigation were given to Chase. Schaffer Dep., ECF No. 148-4, at 16, 20-24; Chase Rule 30(b)(6) Dep., ECF No. 148-12, at 66; Hall Dep., ECF No. 148-3, at 32-34.

Chase took no action against Coffey following her harassment report. In fact, she is still able to work for Chase. Coffey 2nd Dep., ECF No. 150-9, at 37-38; Chase Rule 30(b)(6) Dep., ECF No. 148-12, at 11. Even though Coffey admits she failed to uphold her obligation to reach out to Chase whenever she was available for work, Chase has not terminated her employment. Chase Rule 30(b)(6) Dep., ECF No. 148-12, at 11. However, Coffey claims that because she reported the harassment, working again with Chase would be difficult. Coffey 2nd Dep., ECF No. 150-9, at 141-146, 148-150. A subjective belief of animosity is not enough to prove that Chase was unwilling to employ Coffey. Coffey's apprehension to return to work for Chase does not arise from any interaction from a Chase employee. Therefore, Chase cannot be directly liable under Title VII.

In sum, there is no basis upon which to impose liability on Chase for Coffey's claim that she encountered a hostile work environment while working for ServiceMaster. Accordingly, Chase is granted summary judgment on Count One.

**B.**

Nor is the Count One hostile work environment claim actionable against ServiceMaster for two reasons. First, the conduct alleged against Coffey's co-worker, Chapman, was not so severe or pervasive so as to alter the conditions of employment and create an abusive or hostile environment. Second, there is no basis to impute the brief conduct of Coffey's co-worker to ServiceMaster.

The requirement that the alleged sexual harassment be severe or pervasive "has both a subjective and objective component." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22 (1993). The court must consider the totality of the circumstances, including (1) frequency; (2) severity; (3) whether the conduct was physically threatening or humiliating, or merely an offensive utterance; and (4) whether the conduct unreasonably interfered with the plaintiff's work performance. Dumbaugh v. Univ. of Richmond, No. 3:19cv-57, 2019 WL 4307872, at *3 (E.D. Va. Sept. 11, 2019); see also Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 277 (4th Cir. 2015). This determination is not mathematically precise, Harris, 510 U.S. at 22, and "whether the harassment was sufficiently severe or pervasive to create a hostile work environment is 'quintessentially a question of fact' for the jury[,]" Conner v. Schrader-Bridgeport Int'l, Inc., 227 F.3d 179, 199-200 (4th Cir. 2000).

Assuming Coffey meets the subjective component,[4] no reasonable jury could conclude that the brief encounter between Coffey and Chapman was sufficiently severe or pervasive so as to be actionable under Title VII. Rather, it constitutes a one-time offensive utterance.

---

[4] Although defendant contests that plaintiff subjectively perceived the work environment to be hostile, the court will assume it is satisfied. Coffey testified that she suffered depression, sleeplessness, lack of appetite, weight loss, and lack of motivation. ECF No. 154-18 at 202-03.

Coffey claims that on March 2, 2017, Chapman brushed against her and made comments regarding the type of pants she was wearing and her appearance and figure. Coffey commented on his own attractiveness to young women and encouraged a dog "hump" Coffey's leg. There is no allegation that this conduct, which took place on one day, was repeated. To be sure, Chapman's conduct is offensive. However, the facts developed in discovery as to this one-time offensive incident do not support Coffey's argument that Chapman's conduct was so severe or pervasive as to alter the conditions of employment and create an abusive or hostile environment. See Harris, 510 U.S. at 21 ("'mere utterance of an . . . epithet which engenders offensive feelings in an employee' does not sufficiently affect the conditions of employment to implicate Title VII." (alteration in original) (quoting Meritor, 477 U.S. at 67)); Pryor v. United Air Lines, Inc., 791 F.3d 488, 496 (4th Cir. 2015) ("'[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.'" (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998))); Boyer-Liberto, 786 F.3d at 277 (stating that isolated incidents are generally not sufficient under Title VII).

Nor are there sufficient facts to impute liability for Chapman's brief encounter with Coffey to ServiceMaster. As Chapman was Coffey's co-worker lacking supervisory authority over her, Coffey must show that ServiceMaster maintained a negligent work environment. Vance v. Ball State Univ., 570 U.S. 421, 424 (2013); Strothers v. City of Laurel, 895 F.3d 317, 332-34 (4th Cir. 2018); Pryor, 791 F.3d at 498. Coffey must show that ServiceMaster "knew, or should have known, about the harassment and failed to take action reasonably calculated to stop it." Bazemore v. Best Buy, 957 F.3d 195, 201 (4th Cir. 2020).

Coffey's claim that ServiceMaster was negligent in protecting her from Chapman's advances is very thin. Coffey asserts that she had been told by a number of employees that Chapman "made out" with another co-worker on a job site, and that Mary Faw "told me to watch out for Charles Chapman previously." Coffey 2nd Dep., ECF No. 154-18, at 130-131. There is no evidence to suggest that ServiceMaster knew or should have known that Chapman would make offensive comments about Coffey's appearance or brush against her as she claims. At deposition, ServiceMaster employees testified that they were not aware that Chapman had a history of making sexually explicit comments. Faw Dep., ECF No. 150-4, at 45, 53; White Dep., ECF No. 150-6, at 30; Marshall Dep., ECF No. 150-3, at 62. Many testified that they were not aware of the claim that Chapman had kissed another employee. Martin Dep., ECF No. 150-10, at 23; Faw Dep., ECF No. 150-4, at 45; White Dep., ECF No. 150-6, at 30; Shingleton Dep., ECF No. 150-5, at 27. Chapman passed his background check, and no one had ever complained about him prior to this incident. Arbaugh Dep., ECF No. 150-1, at 54, 112-113. ServiceMaster had a sexual harassment policy of which its staff was aware. ECF No. 150-2, at 6-7; ECF No. 150-14; ServiceMaster Rule 30(b)(6) Dep., ECF No. 150-16, at 10. On this record, there is no basis to impute liability for Chapman's offensive comments to ServiceMaster.

Relying on the Fourth Circuit's opinions in <u>Amirmokri</u> and <u>Cromer Food Services</u>, Coffey asserts that that ServiceMaster did not properly investigate her claim. In <u>Amirmokri</u>, an employer did not investigate the plaintiff's harassment claims at all. <u>See Amirmokri v. Baltimore Gas & Elec. Co.</u>, 60 F.3d 1126 (4th Cir. 1995). In <u>Cromer Food Services</u>, it took an employer four months to investigate the plaintiff's harassment claim. <u>See E.E.O.C. v. Cromer</u>

17

Food Servs., 414 F. App'x 602 (4th Cir. 2011). This case differs from those. Here, ServiceMaster promptly investigated Coffey's claims. In fact, when Arbaugh was told about Chapman's comments to Coffey, he said "we need[] to think about this and make sure that we talk[] to [Chapman]." Arbaugh Dep., ECF No. 150-1, at 58. Later that day, Chapman met with Martin and White to discuss the incident. White Dep., ECF No. 150-6, at 27-29; Martin 2nd Dep., ECF No. 150-15, at 33-34, 40; Martin Dep., ECF No. 150-10, at 25.

The touchstone of a reasonable remedial measure is whether the plaintiff is worse off after her employer's response. Cromer Food Servs., 414 F. App'x at 608 (if plaintiff is "worse off, it is unacceptable as a remedial measure"); Guess v. Bethlehem Steel Corp., 913 F.2d 463, 465 (7th Cir. 1990) ("A remedial measure that makes the victim of sexual harassment worse off is ineffective per se."). In assessing whether ServiceMaster's remedial measures were reasonable, the court is required to set aside Coffey's retaliatory termination claim, which stands alone. Coffey's argument "improperly confuses her hostile work environment claim with her retaliation claim." Saunders v. Metro. Prop. Mgmt., Inc., 806 F. App'x 165, 170 (4th Cir. 2020) ("[T]ermination of employment is a 'discrete act,' which is 'different in kind' from a claim that an employer has maintained or permitted a hostile work environment.") (quoting Nat'l R.R. Passenger Corp., v. Morgan, 536 U.S. 101, 114-15 (2002)). As the Court noted in Morgan, "[h]ostile environment claims are different in kind from discrete acts," such as a termination. Id. Therefore, the question to ask is whether Coffey was worse off after she reported her harassment notwithstanding her termination. Coffey did not lose out on any job site opportunities with ServiceMaster after she reported Chapman, nor did she experience any sort of repercussion from other ServiceMaster employees. Coffey says that after she reported

her harassment, Chapman gave her a "certain look" or would "smirk or comment under his breath." Coffey 2nd Dep., ECF No. 150-9, at 235. But this does not constitute Coffey being worse off. Absent her termination, there is nothing in the record to evidence that Coffey was worse off after she complained about Chapman. Indeed, in her written statement to Chase, Coffey stated: "On Wednesday, March 8th I went to work and could tell the managers had confronted Charles about the situation and was trying to stay clear so no drama was started. Had an amazing day at work that day and once I got off work I came out and received a phone call from Chase Professionals." Coffey Statement, ECF No. 154-6. Under these facts, no reasonable jury could find for Coffey on her hostile work environment claim against ServiceMaster, and its summary judgment motion as to Count I will be granted.

## IV.

Count Two alleges that Coffey was terminated in retaliation for complaining about Chapman's offensive conduct. To prevail on a Title VII retaliation claim, the plaintiff must prove "'(1) that [she] engaged in a protected activity; (2) that [her employer] took an adverse employment action against [her]; and (3) that a causal relationship existed between the protected activity and the adverse employment activity.'" Foster v. Univ. of Maryland-Eastern Shore, 787 F.3d 243, 250 (4th Cir. 2015).

"Title VII retaliation claims must be proved according to traditional principles of but-for causation. . . . This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." Univ. of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 360 (2013). "Generally speaking, temporal evidence alone cannot establish causation for a prima facie case of retaliation, unless the 'temporal proximity

between an employer's knowledge of protected activity and an adverse employment action' was 'very close.'" Shields v. Fed. Express Corp., 120 F. App'x 956, 963 (4th Cir. 2005) (quoting Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001)). Plainly, the temporal proximity here was very close.

After a plaintiff has established a prima facie retaliation claim, the employer may still prevail by offering a legitimate, non-retaliatory reason for the adverse employment action. Foster, 787 F.3d at 250. The plaintiff must then demonstrate that the employer's reason was mere pretext for retaliation by proving "'both that the reason was false, and that discrimination was the real reason' for the challenged conduct." Beall v. Abbott Labs., 130 F.3d 614, 619 (4th Cir. 1997) (quoting Jiminez v. Mary Washington College, 57 F.3d 369, 377-78 (4th Cir. 1995)); see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000); Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 295 (4th Cir. 2010). "A plaintiff may demonstrate pretext by showing 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.'" Fordyce v. Prince George's Cnty, 43 F. Supp. 3d 537, 550 (D. Md. 2014) (quoting Pastran v. K-Mart Corp., 210, F.3d 1201, 1206 (10th Cir. 2000). The court should not "decide whether the [employer's] reason was wise, fair, or even correct, ultimately, so long as it was truly the reason for the plaintiff's termination." DeJarnette v. Corning Inc., 133 F.3d 293, 299 (4th Cir. 1998) (quoting Giannopoulos v. Brach & Brock Confections, Inc., 109 F.3d 406 410-11 (7th Cir. 1997)).

## A.

As to Chase, no facts support Coffey's claim of unlawful retaliation. To be sure, Chase's Hall called Coffey to tell her that her temporary assignment at ServiceMaster was over, but Coffey has remained on Chase's roster for assignment elsewhere, even to this day. As such, Chase took no adverse employment action as a result of Coffey's allegations of sexual harassment at ServiceMaster. Instead, Chase severed its ties with ServiceMaster, making no temporary employee referrals while it investigated Coffey's allegations. Coffey testified that she felt like going back to Chase would be difficult, but that no one from Chase ever said that to her or treated her any differently. Coffey 2nd Dep., ECF No. 150-9, at 141-145, 148-150. In addition, there is no evidence that Chase was aware of Coffey's sexual harassment allegations until her assignment with ServiceMaster was over. For these reasons, summary judgment will be granted for Chase on Count II.

## B.

The retaliation claim against ServiceMaster is a much closer question. Because Coffey was terminated from her assignment at ServiceMaster on the heels of her March 6, 2017 meeting with Martin and White where she was warned regarding her tardiness and she reported Chapman's harassment, Coffey is able to prove prima facie retaliation. See Shields, 120 F. App'x at 963. Therefore, the burden shifts to ServiceMaster to provide a legitimate, non-retaliatory reason for Coffey's firing.

ServiceMaster states that Coffey was terminated because she had dependability issues and her work performance dropped. ServiceMaster Rule 30(b)(6) Dep., ECF No. 150-16, at 7. Arbaugh testified that Coffey's work was subpar, and he was told by Donna Marshall,

ServiceMaster's crew supervisor, that Coffey was unable to "keep up" and "items and areas that was necessary were not getting done properly, which meant that [Marshall] had to go back over [Coffey's] work." Arbaugh Dep., ECF No. 150-1, at 113-114. Additionally, Marshall told Arbaugh that Coffey "worked but not what she said she would do[,]" and Marshall told Coffey to "get off the phone a few times" while Coffey was on the job site. Marshall Dep., ECF No. 150-3, at 39-40. When asked about Coffey's work quality, Faw recalled that Coffey's "work was slacking in the end." Faw Dep., ECF No. 150-4, at 63. She further stated:

> There were things that we had to go back over and redo. [Coffey] started out very well. She did a good job and was very motivated but towards the end, we did notice that there was some lack in work of just little things that shouldn't have needed to be redone that was.

Id. Arbaugh also testified that he "recall[ed] some dependability issues relative to calling in sick, showing up late, or not coming in. All of those were factors." Arbaugh Dep., ECF No. 150-1, at 114. Arbaugh was asked directly whether ServiceMaster terminated Coffey because she complained about Chapman's conduct. Arbaugh said no. Id.   Because ServiceMaster provided legitimate, non-retaliatory reasons for Coffey's termination, the court must now proceed to the pretext stage of the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), framework.

Coffey's case for pretext is based on the timing of the termination of her assignment with ServiceMaster and the text of the email from ServiceMaster's Martin to Chase's Hall on March 8, 2017, which Coffey terms a "smoking gun."  After she was warned on March 6, 2017, about being late to work, Coffey complained to Martin and White about Chapman's offensive conduct. Martin and White notified Arbaugh, and he checked with ServiceMaster

supervisors Marshall and Faw and learned of Coffey's work shortcomings. Arbaugh instructed Martin to terminate Coffey's assignment, which Martin did by telephone call to Chase's Hall on March 7, 2017.

Beyond the timing of the termination of her work assignment with ServiceMaster, Coffey argues that the Martin email of March 8, 2017, calls into question the credibility of Arbaugh's testimony that Coffey's poor work performance motivated her termination. Specifically, Coffey argues this because Martin's email sent the day after Coffey's termination states that "[i]t was also brought to my attention that her workmanship has went down too." ECF No. 154-7. Coffey alleges that Martin's use of the words "also" and "too" in his email, along with its timing, is sufficient to give rise to a genuine issue of material fact as to whether Coffey's termination for poor workmanship was pretextual.

ServiceMaster disagrees, arguing that the text of this email does not create a genuine issue of material fact as to pretext. First, Martin explained the timing of the email to Hall by stating that Arbaugh "asked me later if I had put that [referring to the decline in her workmanship] in the email, and I hadn't, apparently, so I did." Martin Dep., ECF No. 150-10, at 31.  Second, Arbaugh testified that there were two reasons for Coffey's dismissal: work performance and lack of dependability. Arbaugh Dep., ECF No. 150-1, at 114. The record amply supports each of these reasons. On March 6, 2017, Martin and White warned Coffey about her tardiness. While Coffey disputes that she was late to work on more than one occasion, it is undisputed that she was late to work at least once, prompting Martin and White to confront her. Marshall, ServiceMaster crew supervisor, testified that she figured out that Coffey was a "bad employee" on "[t]he first day I worked with her," Marshall Dep., ECF No.

148-9, at 40, citing Coffey's use of her personal phone on job sites and flirtatious manner, id. at 40-44. Mary Faw, then a ServiceMaster crew lead, testified that while Coffey started out very well, "her work was slacking at the end. There were things that we had to go back over and redo." Faw Dep., ECF No. 150-4, at 63. Faw testified that both Marshall and Martin told her "that there is a problem with Ms. Coffey's work." Id. at 63-64.

Coffey also argues that pretext is evident because: (1) another ServiceMaster employee, Johnny Shingleton, Jr., testified that he never heard anything negative about her; and (2) Faw and Marshall's testimony contradicts ServiceMaster's given reasoning. ECF No. 154 at 15. ServiceMaster counters that these conclusions misapprehend the record. While Shingleton testified that he had not heard anything negative about Coffey, he also stated that he was not told why she was terminated. Shingleton Dep., ECF No. 150-5, at 19. Moreover, Shingleton stated that it is customary for Arbaugh to terminate employees who cannot "keep up" or "will not do good [work.]" Id. at 18-19. In fact, the employee states that it is common for Arbaugh to release temporary workers for the very reason that ServiceMaster stated they released Coffey. Additionally, Faw and Marshall state that business was slowing down and the project Coffey was working on was completed, but they do not assert that these were the reasons why she was terminated. When specifically asked why Coffey was terminated, Faw said, "I don't know how that happened. . . . [W]e don't know when [Arbaugh's] letting . . . temp members go or not." Faw Dep., ECF No. 150-4, at 53-54.

On balance, the court finds there to be a genuine issue of material fact as to whether ServiceMaster's stated reasons for terminating Coffey were pretextual. The timing of the

termination combined with the text of the Martin email gives rise to a genuine issue of material fact regarding pretext. As such, Count II against ServiceMaster remains for trial.

**V.**

Because the court finds that there is no genuine dispute of material fact as to any of the claims Coffey brought against Chase, the court **GRANTS** Chase's motion for summary judgement. For the reasons stated, the court **GRANTS** ServiceMaster's motion for summary judgment as to Count I and **DENIES** ServiceMaster's motion as to Count II.

An appropriate order will be entered.

Entered:     March 22, 2021

Michael F. Urbanski
Chief U.S. District Judge
2021.03.22 14:04:36
-04'00'

Michael F. Urbanski
Chief United States District Judge